# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge Daniel D. Domenico

Civil Action No. 1:18-cv-02842-DDD

ARTURO SOLIS,

    Applicant,

v.

M.A. STANCIL,

    Respondent.

## ORDER DENYING APPLICATION
## FOR WRIT OF HABEAS CORPUS

This matter is before the Court on the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (Doc. 1) filed pro se by Applicant Arturo Solis. Respondent filed a Response (Doc. 55), and Applicant filed a Reply (Doc. 58). After reviewing the record before the Court, including the Application, Response, and Reply, the Court concludes that the two claims at issue in this Section 2241 action should be denied and the case dismissed with prejudice.

### PROCEDURAL HISTORY

Applicant is in the custody of the federal Bureau of Prisons ("BOP") in Terre Haute, Indiana. On November 5, 2018, while incarcerated in Florence, Colorado, he submitted the Application. (Doc. 1.) He paid the filing fee required to commence a federal habeas corpus action. (Doc. 5.)

On January 8, 2019, the Court entered an Order Severing Case and Denying Motions. (Doc. 19.) Pursuant to that Order, two claims remain

1

for adjudication in this § 2241 action: (1) Claim Nine, alleging wrongful deprivation of good time credits resulting from a disciplinary hearing, and (2) Claim Twelve, alleging wrongful miscalculation of the start date of Applicant's federal sentence. (*See* Doc. 1 at 10-11, 13.)

As part of the preliminary consideration of Claims Nine and Twelve, the Court directed Respondent to file a Preliminary Response and supplement addressing exhaustion of administrative remedies. (Doc. 20; Doc. 49.) In response, Respondent asked "that the Court proceed to the merits of the claims presented by Applicant." (Doc. 50 at 2.)

On August 13, 2019, the Court entered an Order directing Respondent to show cause as to why the two remaining claims should not be granted. (Doc. 51.) Respondent filed a Response, and Applicant filed a Reply. (Doc. 55; Doc. 58.) The matter is ripe for judicial review.

## LEGAL STANDARD

The Court must construe Applicant's filings liberally because he is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The Court, however, should not be an advocate for a pro se litigant. *See Hall*, 935 F.2d at 1110.

Habeas corpus relief is warranted only if Applicant "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). An application for a writ of habeas corpus "is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see also McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997).

"A petition under 28 U.S.C. § 2241 attacks the execution of a sentence rather than its validity and must be filed in the district where the prisoner is confined." *Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996) (citation omitted). "[A] § 2241 attack on the execution of a sentence may challenge the loss of good time credits and 'other prison disciplinary matters.'" *Buhl v. Hood*, 81 F. App'x 273, 274 (10th Cir. 2003) (citation omitted). The Attorney General's decisions regarding sentence calculations, made through the BOP, also may be reviewed in a habeas corpus action pursuant to 28 U.S.C. § 2241. *See Walker v. United States*, 680 F.3d 1205, 1205 (10th Cir. 2012).

As a preliminary matter, Applicant was confined in this District of Colorado at the time he commenced this action. (*See* Doc. 1.) As Magistrate Judge Gordon P. Gallagher determined, the subsequent transfer of Applicant to Terre Haute, Indiana, did not "divest the reviewing court of its jurisdiction." (Doc. 45 at 3 (citing *Hammer v. Meachum*, 691 F.2d 958, 961 (10th Cir. 1982) ("transfers made in violation of [Fed. R. App. 23(a)] do not divest the reviewing court of its jurisdiction").) Applicant has not alleged that the transfer prejudiced his prosecution of this action, he remains in the custody of the same custodian, the federal Bureau of Prisons, and "Respondent will not argue that the transfer to the new Bureau facility defeats the Court's jurisdiction or venue or deprives this Court of authority to render a decision in the pending habeas action." (*See id.*; *see also* Doc. 37 at 4.) Thus, this Court will review the Application even though this no longer is the district where Applicant is confined.

### CLAIM NINE: DISCIPLINARY HEARING

In Claim Nine, Applicant alleges the wrongful deprivation of good time credits resulting from a disciplinary hearing in which he was not

allowed to cross-examine the charging officers. (Doc. 1 at 10-11.) More specifically, Applicant alleges that on April 9, 2018, prison staff filed an incident report "falsely accusing" him of "striking with closed fist punches" another inmate. (*Id.* at 10.) He alleges a disciplinary hearing was held on April 27, 2018, and the hearing officer denied his request "to bring and present the charging officers." (*Id.*) Applicant contends this denial violated his Fifth Amendment right to due process and his Sixth Amendment right "to confront and cross-examine the witnesses against [him]." (*Id.* at 11.) Applicant states the hearing officer found him guilty and, as a result, wrongfully deprived him of 27 days of good time credit and imposed an $11 fine. (*Id.*)

In Response, Respondent asserts that "Applicant was given the option to call witnesses and an opportunity to be heard, and his disciplinary sanction was supported by evidence." (Doc. 55 at 6.) Respondent alleges "Applicant waived the right to call witnesses." (*Id.* at 7.) Respondent argues that, in any event, the charging officers' testimony was not necessary because it was summarized in the incident report, and only the hearing officer could have directly questioned the officers, if called. (*Id.*)

In Reply, Applicant alleges the hearing officer "simply lied by falsely saying that I requested no witnesses." (Doc. 58 at 7.) Applicant reiterates that his "request for witnesses . . . would have established that I was not guilty as charged." (*Id.*)

**I. Facts Regarding Disciplinary Hearing**

Respondent filed a declaration by the hearing officer who presided over the subject disciplinary hearing. (Doc. 55-10.) Respondent also submitted copies of the Discipline Hearing Officer Report, incident report, Applicant's written statement regarding the incident report, and

4

medical records regarding the treatment Applicant received after the alleged altercation. (Doc. 55-12.) Although Applicant alleges the hearing officer lied regarding whether he requested witnesses, Applicant does not contest the authenticity of the documents. (*See* Doc. 58.)

The incident report is dated April 9, 2018, which is the same date as the alleged incident. (Doc. 55-12 at 5.) The reporting prison officer, "G. Romain," described the incident as follows:

> On 04-09-2018 at approximately 09:10am while feeding the morning meal there was loud shouting coming from Z05 range. Upon making a round on Z05 range I came upon cell 147 occupied by inmates Solis, Arturo . . . and inmate [redacted] And observed both inmates in the shower, striking each other with closed fist punches. I gave multiple orders to stop fighting, which were ignored. At that time I deployed one, two second burst of OC in an attempt to stop the fighting. Both inmates continued striking each other, at that time another loud verbal command to stop fighting was given and ignored. I then deployed another two second burst of OC. At that time inmate [redacted] submitted to hand restraints, followed by inmate Solis. Both inmates were escorted to holding cells to await medical assessment.

(*Id.*) The incident report indicates Applicant "claim[ed] he was defending himself." (*Id.*)

Applicant's written statement regarding the alleged incident is dated April 10, 2018, and is redacted in large part. (*Id.* at 7.) The unredacted portion shows Applicant asserted he was "not guilty," "because I have a right to defend myself when I am placed under the threat of imminent serious bodily injury, as the facts would show in this present case." (*Id.*)

The Discipline Hearing Officer ("DHO" or "hearing officer") Report is dated June 9, 2018. (*Id.* at 4.) It states that a hearing regarding the alleged incident was held on April 27, 2018. (*Id.* at 2.) The report summarizes the charges against Applicant as "[f]ighting with another person."

5

(*Id.*) It summarizes Applicant's position regarding the charges as that he "denied committing the offense/charge" and "claim[ed] self-defense." (*Id.*)

The report states Applicant was provided with "advanced written notice of the charge" as well as advised of his rights with regard to the hearing prior to the hearing date. (*Id.*) The report indicates Applicant waived his rights to staff representation and witnesses. (*Id.*) No witnesses were called at the hearing. (*Id.*) The evidence reviewed included the incident report, Applicant's written statement claiming self-defense, "memos from S. Anaya and J. Butkovich," and the involved inmates' medical assessments. (*Id.*)

The hearing officer concluded that Applicant "committed the prohibited act of fighting with another person, code 201, based on staff's observations that you and Inmate SOLIS were striking each other with closed fist punches." (*Id.* at 3.) Regarding Applicant's allegations of self-defense, the hearing officer noted that Applicant "had options to inform staff of you and your cellies conflicts and request to be reassigned from your current cell." (*Id.*) The hearing officer explained Applicant's assertion of the right to defend himself was "false"; instead, Applicant had "the right to request to be moved if you are not able to house with some." (*Id.*) The hearing officer also considered but rejected Applicant's contention that the other inmate had "mental health concerns." (*Id.*)

As sanctions for the violation of code 201, the hearing officer imposed a discharge of 27 days of Applicant's good time credits, limitations on his access to the commissary and phone for 60 days, and a monetary fine of $11. (*Id.* at 4.)

## II. Analysis Regarding Disciplinary Hearing

"It is well settled that an inmate's liberty interest in his earned good time credits cannot be denied without the minimal safeguards afforded by the Due Process Clause of the Fourteenth Amendment." *Howard v. U.S. Bureau of Prisons*, 487 F.3d 808, 811 (10th Cir. 2007) (internal quotation marks omitted) (quoting *Mitchell v. Maynard*, 80 F.3d 1433, 1444 (10th Cir. 1996)) (applying law to federal prisoner). But "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Where a prison disciplinary hearing may result in the loss of good time credits, the inmate must receive:

> (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

*Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff*, 418 U.S. at 563-67). The decision-maker must be impartial. *See Gwinn v. Awmiller*, 354 F.3d 1211, 1219 (10th Cir. 2004) (citation omitted).

In addition, to comport with due process, there must be some evidence to support a disciplinary conviction. *Hill*, 472 U.S. at 454. "[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits." *Id.* at 455. "Importantly, determining whether some evidence supports the DHO's decision 'does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is *any*

*evidence* in the record that could support the [DHO's] conclusion.'" *Pittman v. Fox*, 766 F. App'x 705, 726 (10th Cir. 2019) (citation omitted). A disciplinary decision can be upheld by a reviewing court "even if the evidence supporting the decision is 'meager.'" *Mitchell*, 80 F.3d at 1445 (quoting *Hill*, 472 U.S. at 457).

Regarding witnesses, the Tenth Circuit has stated that "[t]he Sixth Amendment right to confront one's accusers is available only in criminal trials." *Kucera v. Terrell*, 214 F. App'x 729, 730 (10th Cir. 2006). "Prisoners have only a qualified right to call witnesses in a disciplinary hearing." *Freeman v. Carroll*, 506 F. App'x 694, 705 (10th Cir. 2012). Due process, unlike the Sixth Amendment, "does not require the confrontation and cross-examination of witnesses in prison disciplinary proceedings." *Taylor v. Wallace*, 931 F.2d 698, 701 (10th Cir. 1991) (citing *Wolff*, 418 U.S. at 567-69). "Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence." *Wolff*, 418 U.S. at 566.

"[E]rrors made by prison officials in denying witness testimony at official hearings are subject to harmless error review." *Howard*, 487 F.3d at 813. The denial of a request for a witness constitutes harmless error if the information the witness possesses is before the hearing officer in another form, such as a written statement. *See id.*; *see also Jordan v. Wiley*, 411 F. App'x 201, 209 (10th Cir. 2011) ("the ability to call this witness is at best no more than a claim of harmless error, as any information that this officer possessed was before the DHO").

Here, Applicant alleges his due process rights were violated during the disciplinary hearing because he was not allowed to call as witnesses

and cross-examine the charging officers Romain, Anaya, and Butkovich. (Doc. 1 at 10-11.) However, the officers' statements were before the hearing officer for consideration, in the form of the incident report authored by Officer Romain and the memos by Officers Anaya and Butkovich. (*See* Doc. 55-12 at 3.) Even if Applicant had called the officers as witnesses, Applicant did not have a right to cross-examine them. *Taylor*, 931 F.2d at 701; *Kucera*, 214 F. App'x at 730.

The record before the Court shows that Applicant received written notice of the disciplinary charges in advance of the hearing (*see* Doc. 55-12 at 2, 5), the opportunity to present documentary evidence in the form of his written statement (*see id.* at 3, 7), and a written decision by the hearing officer regarding "the evidence relied on and the reasons for the disciplinary action" (*see id.* at 2-4), which are the requirements to comport with due process. *See Hill*, 472 U.S. at 454; *Wolff*, 418 U.S. at 563-67. Even if Applicant was not provided with an opportunity to present witnesses as he alleges, such error is harmless, because the information possessed by the charging officers was before the hearing officer in the incident report and memos. (*See* Doc. 55-12 at 3.) Applicant presented his defense that he defended himself against his cell mate who had "mental health concerns", which was rejected when weighed against the other evidence and available methods for Applicant to resolve his dispute with his cell mate. (*See id.*)

Applicant did not deny that he engaged in a physical altercation with the other inmate, but asserted self-defense. (*See id.*) There is no constitutional right to claim self-defense in a prison disciplinary proceeding. *See Moore v. Denham*, No. 14-cv-02461-PAB, 2015 WL 3412874, at *4 (D. Colo. May 27, 2015) (citing *Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011); *Rowe v. DeBruyn*, 17 F.3d 1047, 1052-53 (7th Cir. 1994)). Thus, an inmate may be disciplined for physical violence even if he was

9

attempting to protect himself. *See Scruggs v. Jordan*, 485 F.3d 934, 938-39, 941 (7th Cir. 2007).

The evidence relied on by the hearing officer included the incident report, medical assessments of Applicant and the other inmate, and memos by Officers Anaya and Butkovich. (*See* Doc. 55-12 at 3.) On review of the Discipline Hearing Officer Report and attachments (Doc. 55-12), including the incident report, the Court finds that there was at least some evidence in the record to support the hearing officer's determination that Applicant was guilty of the charged disciplinary offense. *See Ruelas v. Zuercher*, 240 F. App'x 796, 797 (10th Cir. 2007) (explaining that the incident "report alone constitutes 'some evidence' of Petitioner's guilt"); *Farrakhan-Muhammad v. Oliver*, 677 F. App'x 478 (10th Cir. 2017) (staff report of incident, together with video footage, constituted some evidence to support the disciplinary conviction).

For these reasons, the Court concludes that the disciplinary hearing and conviction comported with the requirements of due process. Claim Nine lacks merit and is denied.

## CLAIM TWELVE: SENTENCE COMPUTATION

In Claim Twelve, Applicant alleges the BOP wrongfully miscalculated the start date of his federal sentence. (Doc. 1 at 13.) More specifically, Applicant asserts his federal sentence should be considered as beginning in 1996, because he was in federal custody for six months during that year. (*Id.*) Applicant alleges the BOP instead calculates this sentence as commencing on February 8, 2018, in violation of his constitutional rights. (*Id.*)

Respondent states that the BOP calculates Applicant's federal sentence to have commenced on December 14, 2017, which is the date the

state of Texas determined Applicant was "eligible for release to federal authorities." (Doc. 55 at 4-5.) Regarding the six months in federal custody in 1996, Respondent explains that such custody was pursuant to a writ of habeas corpus *ad prosequendum*, while Applicant was still serving his state sentence. (*Id.* at 5-6.) Thus, that time does not credit his federal sentence. (*Id.*)

In Reply, Applicant argues that his federal custody started on December 26, 1995, when he was arrested by the U.S. Marshals Service. (Doc. 58 at 3.) He asserts that his "continuous official detention" pursuant to a federal detainer lodged against him on July 18, 1996, should be credited toward his federal sentence. (*Id.* at 4.) He alleges Respondent failed to meet his burden by failing to produce the writ of habeas corpus *ad prosequendum*. (*Id.*) Applicant believes the prior custody credit statute applies only to federal, not state, sentences. (*Id.* at 4-5.)

**I. Facts Regarding Sentence Computation**

On June 29, 1989, the state of Texas sentenced Applicant "to 35 years imprisonment for Aggravated Robbery with a Deadly Weapon." (Johnson Decl., Doc. 55-1 at ¶ 6; Judgment, Doc. 55-4.)

On December 26, 1995, Applicant was transferred to federal custody "pursuant to a federal writ on a charge of possession of an unregistered destructive device." (Johnson Decl., Doc. 55-1 at ¶ 7; *see also* USM-129 Individual Custody/Detention Report, Doc. 55-5 at 2 ("arrest date" on "12-26-1995").)

On July 8, 1996, the U.S. District Court for the Western District of Texas imposed a 137-month sentence. (Johnson Decl., Doc. 55-1 at ¶ 8; *see also* Judgment, Doc. 55-3.) The Judgment stated:

> The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of ONE HUNDRED TWENTY (120) MONTHS as to Count S1; ONE HUNDRED TWENTY (120) MONTHS as to Count S2, SEVENTEEN (17) MONTHS of which to be served CONSECUTIVELY to the term of imprisonment imposed as to Count S1 and the remaining ONE HUNDRED THREE (103) MONTHS to be served CONCURRENTLY with the term of imprisonment imposed as to Count S1; and ONE HUNDRED TWENTY (120) MONTHS as to Count S3, such term to be served CONCURRENTLY with the terms of imprisonment imposed as to Counts S1 and S2. TOTAL TERM OF IMPRISONMENT: ONE HUNDRED THIRTY-SEVEN (137) MONTHS. **This term of imprisonment shall not begin until Defendant has completed the State sentence he is now serving.**
>
> The defendant shall remain in custody pending service of sentence.

(Doc. 55-3 at 3 (bold emphasis added).) The U.S. Marshals Service form shows that Applicant was in temporary custody for imposition of the federal sentence from December 26, 1995 to July 9, 1996, when he was returned to the Texas Department of Corrections. (Doc. 55-5 at 2, Section II, "Custody 1" ("RWHCAP TO TDC").)

On July 2, 2002, the state of Texas sentenced Applicant "to 6 years imprisonment for Attempted Murder for the assault on another prisoner." (Johnson Decl., Doc. 55-1 at ¶ 9.) The sentence was ordered to run consecutively to the original 35-year state sentence, for "a total term of imprisonment in the TDCJ of 41 years." (*Id.*; *see also* Judgment, Doc. 55-6.)

On December 14, 2017, the state of Texas released Applicant on parole to the custody of the U.S. Marshals Service. (Johnson Decl., Doc. 55-1 at ¶ 10; Parole Docs., Doc. 55-7 (Texas Certificate of Parole signed by Applicant and dated December 14, 2017, and notice of parole to the U.S. Marshal as the "detainer agency").)

The BOP determined Applicant's federal sentence commenced on December 14, 2017, when he "was received into exclusive federal custody." (Johnson Decl., Doc. 55-1 at ¶ 11.) The BOP explains, "[a]s ordered by the federal sentencing court, the 137-month federal term has been computed as not beginning until after Applicant completed his state prison sentences." (*Id.* at ¶ 13.) "Applicant has a projected release date of December 17, 2027, via good conduct time release." (*Id.* at ¶ 5; *see also* Inmate Data Report, Doc. 55-2 at 2; Computation Data Report, Doc. 55-8 at 2.)

**II. Analysis Regarding Sentence Computation**

"The computation of a federal sentence requires consideration of two separate issues." *Binford v. United States*, 436 F.3d 1252, 1254 (10th Cir. 2006). The first issue involves the date a federal sentence commences. *See id.* "A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a).

The second issue involves credit for prior custody. *See Binford*, 436 F.3d at 1254. Pursuant to 18 U.S.C. § 3585(b), credit for prior custody is awarded for any time a defendant "spent in official detention *prior* to the date his federal sentence commences if the detention resulted from the same offense of conviction or from another charge for which the defendant was arrested after commission of the offense of conviction *and* if that time has not been credited against another sentence." *Weekes v. Fleming*, 301 F.3d 1175, 1178 (10th Cir. 2002).

The Attorney General, through the BOP, is responsible for making the sentence calculations prescribed by Section 3585. *See United States*

13

*v. Wilson*, 503 U.S. 329, 334 (1992). The Attorney General's decision may be reviewed in a habeas corpus action pursuant to 28 U.S.C. § 2241.

**A. Commencement of Applicant's Federal Sentence**

Applicant contends his federal sentence commenced on "the December 26, 1995 arrest date." (Reply, Doc. 58 at 4.) The Court disagrees.

Pursuant to Section 3585(a), a federal sentence does not commence until a prisoner is actually received into federal custody with the purpose of serving the sentence. *See Binford*, 436 F.3d at 1255. A federal sentence "cannot commence prior to the date it is pronounced, even if made concurrent with a sentence already being served." *United States v. Flores*, 616 F.2d 840, 841 (5th Cir. 1980); *DeMartino v. Thompson*, No. 96-6322, 116 F.3d 1489 (10th Cir. July 1, 1997) (unpublished table decision) (citing *Flores*); *Mogavero v. Cozza-Rhodes*, No. 14-cv-02381-REB, 2015 WL 3660330, at *3 (D. Colo. June 12, 2015) (same).

"The sovereign that first acquires custody of a defendant in a criminal case is entitled to custody until it has exhausted its remedy against the defendant." *Weekes*, 301 F.3d at 1180. "This rule of comity does not destroy the jurisdiction of the other sovereign over the defendant; it simply requires it to postpone its exercise of jurisdiction until . . . the first sovereign agrees to temporarily or permanently relinquish custody." *Id.* (citations omitted).

A federal district court may issue a writ of habeas corpus *ad prosequendum* "to secure the presence, for purposes of trial, of defendants in federal criminal cases, including defendants then in state custody." *United States v. Mauro*, 436 U.S. 340, 358 (1978). The use of an *ad prosequendum* writ to gain custody indicates the sovereign gaining custody is

merely *borrowing* the prisoner from the sovereign with primary custody. *See Weekes*, 301 F.3d at 1181.

Similarly, a "federal detainer[ is] not evidence that Defendant was in federal custody." *Wise v. Chester*, 424 F. App'x 726, 729 (10th Cir. 2011). To the contrary, like an *ad prosequendum* writ, a detainer indicates that the federal government recognizes the defendant was in state custody. *Id.*

The Tenth Circuit's analysis in *Newman v. Cozza-Rhodes* is instructive. *See* 526 F. App'x 818 (10th Cir. 2013). In *Newman*, the petitioner claimed,

> he is entitled to credit against his federal sentence for the entire time he spent in state custody from his arrest on December 26, 2006, until his release on parole on August 10, 2010. According to him, the federal government had primary custody over him from the date of his arrest because the search of his home was pursuant to a federal warrant and federal agents were the first to arrest him. And, because the federal government never relinquished its primary custody to the State, Newman claims his federal sentence commenced the day it was pronounced even though the U.S. Marshals Service erroneously returned him to state custody.

*Id.* at 820. The Tenth Circuit disagreed, concluding "Newman's federal sentence commenced on August 10, 2010, when Newman was released from state parole and the federal marshals took him into custody to serve his federal sentence." *Id.* at 821. The court reasoned that

> the facts unequivocally show the State, not the federal government, was the first to take [Newman] into custody following his arrest. Therefore, the State "had primary custody of [him] and the right to maintain or relinquish control of [him]." . . . Because the federal government took only temporary custody of him under a writ of habeas corpus *ad prosequendum*, [the state] "was entitled to [Newman's]

15

> return after his federal sentencing under the law of comity and the requirements of the writ."

*Id.* (citations omitted); *see also Hernandez v. U.S. Att'y Gen.*, 689 F.2d 915, 918 (10th Cir. 1982) (temporary transfer of custody from state to federal government pursuant to a writ of habeas corpus *ad prosequendum* did not relinquish state's jurisdiction).

Here, the state of Texas was the first sovereign to take Applicant into custody and sentence him; therefore, the state of Texas had primary custody and the right to maintain or relinquish control of Applicant. As recounted above, on December 26, 1995, Applicant was transferred from state to federal custody "pursuant to a federal writ." (Johnson Decl., Doc. 55-1 at ¶ 7; Doc. 55-5 at 2.) This transfer was "only temporary custody" pursuant to the writ, for the purpose of securing Applicant for the federal charges. *See Newman*, 526 F. App'x at 821. After pronouncement of the federal sentence, the federal authorities returned Applicant to state custody. (Doc. 55-5 at 2, Section II, "Custody 1".) The state of Texas relinquished Applicant to federal custody once it released him on parole, effective December 14, 2017. (Johnson Decl., Doc. 55-1 at ¶ 10; Parole Docs., Doc. 55-7.)

Applicant's sentence could not have commenced at the time of his federal arrest on December 25, 1996, because at that time, the federal sentence had not yet been pronounced. *E.g.*, *Flores*, 616 F.2d at 841. Like the petitioner in *Newman*, Applicant's federal sentence commenced on December 14, 2017, when he was released on state parole, and the U.S. Marshals Service took him into custody to serve his federal sentence. 526 F. App'x at 821. This is consistent with the Judgment entered in Applicant's federal criminal case, which ordered, "[t]his term of imprisonment shall not begin until Defendant has completed the State sentence he is now serving." (Doc. 55-3 at 3.) Therefore, the BOP correctly

determined that Applicant's federal sentence commenced on December 14, 2017. (*See* Computation Data Report, Doc. 55-8.)

The Court is not concerned by what Applicant alleges is a failure by Respondent to produce the actual *ad prosequendum* writ issued in 1995. The declaration and U.S. Marshals Service report are sufficient to establish the fact of Applicant's temporary federal custody from December 26, 1995 to July 9, 1996. (Doc. 55-1; Doc. 55-5); *see also Gayton v. Romero*, 503 F. App'x 562, 564 (10th Cir. 2012) (petitioner bears the "burden of proof of clearly showing or stating how his sentence has been calculated by prison authorities, what particular calculations he asserts are erroneous, and the reasons and or authority for his assertions"; conclusory allegations are insufficient).

## B. Credit for Prior Custody

The next question is whether Applicant is entitled to additional credit against his federal sentence for his time in custody prior to the commencement of that sentence. To the extent Claim Twelve can be construed as seeking prior custody credit, such claim lacks merit.

Title 18, United States Code, Section 3585(b) provides:

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—
>
> (1) as a result of the offense for which the sentence was imposed; or
>
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

"Congress made clear [in enacting § 3585(b)] that a defendant could not receive a double credit for his detention time." *Wilson*, 503 U.S. at 337.

Applicant's suggestion that Section 3585(b) does not apply to state sentences is incorrect. (Doc. 58 at 4-5.) Pursuant to this statute, credit already applied to a state sentence cannot be applied to a subsequent federal sentence. *E.g., Weekes*, 301 F.3d at 1178 ("Mr. Weekes received credit against his state sentence for all the time served prior to the date his federal sentence commenced . . . [thus] Mr. Weekes is not entitled to pre-sentence credit under § 3585(b)").

As explained above, the BOP correctly determined that Applicant's federal sentence commenced on December 14, 2017. The Computation Data report provided by Respondent correctly indicates this date as the "date computation began." (Doc. 55-8 at 2.) The report then notes 137 months as the "total term in effect," and, considering good time credits, estimates Applicant's projected release date as December 17, 2027. (*Id.*; *see also* Judgment, Doc. 55-3.) No credit to the federal sentence is due because the time Applicant spent in custody prior to December 14, 2017, was credited to Applicant's state sentence. (Johnson Decl., Doc. 55-1 at ¶ 14.) Again, this execution of Applicant's federal sentence is consistent with the sentencing court's order that the federal sentence not commence until after completion of the state sentence. (*Id.* at ¶ 15; Judgment, Doc. 55-3.) Applicant cannot be given prior custody credit to his federal sentence for the same period of time. 18 U.S.C. § 3585(b); *Wilson*, 503 U.S. at 337 ("Congress made clear that a defendant could not receive a double credit for his detention time").

The same analysis applies to Applicant's time in temporary federal custody prior to sentencing between December 26, 1995 and July 8, 1996. (*See* Doc. 55-5 at 2.) Such time was credited toward service

of the state sentence, and Section 3585(b) prohibits double credit to Applicant's federal sentence. (Johnson Decl., Doc. 55-1 at ¶ 14); *Wilson*, 503 U.S. at 337.

For these reasons, the Court concludes the BOP is executing Applicant's federal sentence correctly as ordered. Claim Twelve lacks merit and is denied.

## CONCLUSION

For the reasons stated herein, it is ORDERED that, with regard to the two remaining Claims Nine and Twelve, the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (Doc. 1) is DENIED, and this case is DISMISSED WITH PREJUDICE.

DATED: April 6, 2020     BY THE COURT:

Hon. Daniel D. Domenico